285 So.2d 839 (1973)
The TRAVELERS INSURANCE COMPANY and William E. Crawford
v.
Edgar JENKINS et al.
No. 9494.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
*840 Ben C. Toledano and John J. Hainkel, Jr., New Orleans, for third-party defendant-appellant Southern Farm Bureau Cas. Ins. Co.
France W. Watts, III, Franklinton, for plaintiff-appellee Travelers.
Wm. E. Crawford, Baton Rouge, for plaintiff in intervention, Sandra Crawford.
Clayton S. Knight, Franklinton, for defendants-appellees W. Blackwell, Jenkins and Cotton.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Third party defendant, Southern Farm Bureau Casualty Insurance Company (Southern Farm) appeals a judgment in favor of its alleged insureds, Ralph Cotton, Walter G. Blackwell and Edgar Jenkins (defendants), defendants in the main demand herein, holding Southern Farm liable for judgments rendered against defendants in favor of plaintiffs, The Travelers Insurance Company (Travelers) and its insured, William R. Crawford. Southern Farm asserted lack of coverage of the vehicle involved in the accident giving rise to this litigation as a defense to defendants' third party demand, considering its policy was cancelled for nonpayment of premiums before *841 the accident occurred. The trial court rejected Southern Farm's defense of cancellation. Judgment was also rendered in favor of third party plaintiffs against Southern Farm for attorney's fees in the amount of $750.00, and also for amounts recovered from defendants (third party plaintiffs) by plaintiffs in the main demand. The trial court also rejected Southern Farm's claim for setoff of premiums allegedly owed as a credit due Southern Farm on any judgments rendered against it in favor of third party plaintiffs. We affirm the judgments in all respects save its rejection of Southern Farm's claim for set-off, and remand this matter to the trial court for disposition of that issue.
The record discloses some sort of arrangement between Cotton and Blackwell, akin to a partnership agreement, for the operation of a trucking and hauling business. Cotton owned a fleet of trucks and occasionally leased or hired vehicles covered under a fleet policy issued by Southern Farm. Jenkins is the employee of Cotton and Blackwell. On July 19, 1969, a tractor either owned or leased by Cotton, and driven by Jenkins, ran into the rear of an automobile owned and being driven by Crawford. It is conceded Jenkins was at fault in causing the accident. Crawford was accompanied by his wife and other guest passengers. Travelers' policy covering Crawford's vehicle contained an uninsured motorist clause. Travelers paid Crawford $1,380.13 for damages to Crawford's vehicle, and also paid the occupants of the Crawford car a total of $1,930.00 under the uninsured motorist clause in Crawford's policy. Pursuant to subrogation and assignments, Travelers sued Cotton, Blackwell and Jenkins for the amounts paid, alleging that Cotton's vehicle was uninsured. Crawford sued the same defendants for $100.00 deducted from his damages pursuant to his policy with Travelers, also alleging the Cotton vehicle was uninsured. Judgment was rendered in favor of plaintiffs on their main demands for the amounts claimed, and on defendants' third party demand against Southern Farm as above indicated.
Southern Farm, the only appellant, makes the following contentions: (1) The trial court erred in holding the policy was in effect on the accident date because of Southern Farm's failure to give proper cancellation notice; (2) If the policy is held to be effective, Travelers is not entitled to judgment under its uninsured motorist clause; (3) If the policy was in effect on the accident date, Southern Farm is entitled to off-set of the premiums due by Cotton, and (4) If the policy be determined to be in effect, the sum of $750.00 awarded third party plaintiffs for attorney's fees, is excessive.
Third party plaintiffs maintain the lower court rightly held the policy was not effectively cancelled because the notice sent Cotton was defective. Alternatively, third party plaintiffs maintain that Southern Farm's acceptance of Cotton's check, tendered in payment of premiums on July 11, 1969, estops Southern Farm from pleading nonpayment of premiums.
The record discloses that Cotton held an automobile fleet policy issued by Southern Farm with a termination date of February 5, 1969. On February 26, 1969, John Acaldo, Southern Farm's Underwriting Manager, wrote Cotton that a renewal premium of $3,272.83 was due on the policy, and if not paid, coverage would cease, effective March 8, 1969. On March 19, 1969, a letter from Stephen T. Kimball, Underwriter for Southern Farm, to Cotton advised that coverage ceased March 8, 1969, and that an audit premium in the sum of $699.35 was due on or before April 4, 1969.
On April 11, 1969, Kimball wrote Cotton a letter containing the following concerning policy CA 701153:
"We have reinstated your policy effective April 3, 1969, and we are enclosing your renewal policy and a premium notice in the amount of $208.33.

*842 The total premium needed for renewal of your policy is $3,069.16. We have received your payment in the amount of $2,860.83 leaving a balance due in the amount of $208.33. If you will kindly forward this amount to us, your policy will be paid in full until April 3, 1970."
Cotton's check, mentioned in Kimball's letter of April 11, 1969, was dishonored by the drawee bank because of insufficient funds in Cotton's account. On May 20, 1969, Kimball returned Cotton's unpaid check by letter which also advised that Cotton's coverage would be extended until May 30, 1969, to permit Cotton opportunity to forward a replacement check. Kimball further advised that if the check were not made good, coverage would be cancelled effective May 30, 1969. On May 29, 1969, Cotton forwarded Southern Farm a check in the sum of $3,069.16, which included the premium due on the new policy, and a balance owed for a previous policy period. This check was also dishonored by the drawee bank and returned to Southern Farm for insufficient funds to Cotton's credit.
On July 1, 1969, Kimball wrote Cotton a letter of cancellation which states, in pertinent part, as follows:
"We are returning your check dated May 29, 1969 in the amount of $3,069.16 intended to apply to the above policy. This check has been returned to us by your bank marked "Insufficient Funds."
We feel that this was simply an oversight on your part, however, this is the second check which has been returned to us for insufficient funds in the past few weeks. Therefore, we will continue coverage on this policy until 12:01 a. m., July 11, 1969 in order that you may have an opportunity to submit a replacement payment to us. It will be necessary that you send a money order or a certified check in order to clear your account. If we have not received the replacement payment within the time mentioned above, the policy will be cancelled effective that date."
At some time on the morning of July 11, 1969, during normal office hours, and admittedly after 12:01 A.M. of that date, Cotton tendered his uncertified personal check, dated that day, in the sum of $3,069.16, to Southern Farm's local agent, Jack Sharp. The accident in question occurred July 19, 1969. On July 25, 1969, John J. Acaldo, Underwriting Manager for Southern Farm, returned Cotton's check of July 11, 1969, in a letter which states:
"We are returning your check dated July 11, 1969 intended to apply for payment of the above policy.
In accordance with our letter dated July 1, 1969, we called to your attention that the policy could not be continued unless we received a certified check or a money order from you on or before July 11, 1969.
In view of the above, the policy was cancelled effective April 3, 1969 and no coverage has been provided under the policy since that date. There is audit premium due in the amount of $699.35 as a result of changes that occurred on the policy during the last policy term. Please forward a cashier's check or money order to cover this additional premium.
If there are any questions, please contact us."
Cancellation of automobile liability policies for nonpayment of premiums is governed by LSA-R.S. 22:636.1, in which we note these pertinent provisions:
"B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(1) Nonpayment of premium, or. . . ."
C. No notice of cancellation of a policy to which Subsection (B) applies *843 shall be effective unless mailed or delivered by the insurer to the named insured at least twenty days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten days' notice of cancellation accompanied by the reason therefor shall be given. . . ."
In holding Southern Farm's attempted cancellation ineffective for lack of proper notice, the trial court relies upon Ellzey v. Hardware Mutual Ins. Co. of Minnesota, La.App., 40 So.2d 24 (1st Cir.) (1949). In Ellzey, above, the insurer sent the following notice of cancellation:
"The undersigned hereby give notice that Policy No. 715603 effective June 12, 1947 will be cancelled on the 13th day of November, 1947, at 12:01 o'clock, A.M. standard time.
Payment of $39.57 premium, prior to the effective date of this notice will keep this policy in force."
Ellzey established the rule that a notice of cancellation which states that a policy will be cancelled on a specified date unless premiums due are sooner paid, is not a notice of cancellation, but merely a demand for payment. Consequently, such a notice is ineffective as a matter of law. In so holding, Ellzey cited and relied upon authorities quoted in 45 C.J.S., verbo, Insurance § 450, page 89, note 77.
Southern Farm contends the lower court erred in applying the Ellzey rule which has been changed in Alexander v. State Farm Mutual Automobile Insurance Co., La.App., 148 So.2d 898.
In Alexander, above, the cancellation notice read in part, as follows:
"Dear Member:
"We have not received the full amount required to keep this policy in force. This leaves us with no alternative, and we are obligated to notify you that this policy is cancelled, effective on 10-13-57 12:01 A.M. Standard Time."
In Alexander, above, we referred to language in Ellzey which stated that "the notice must clearly and unequivocally show a present cancellation." We held that no such requirement is contained in R.S. 22:636, the statute in force at the time Alexander was decided in 1962. We further held that the notice in Alexander was not a demand for payment, but an unequivocal notice of cancellation. We observed therein that the notice expressly stated the policy is cancelled, effective a specified date, and was devoid of any language which alters, varies or conditions the cancellation date established. We held such a notice to be clear, unequivocal and legally effective.
Neither LSA-R.S. 22:636 nor 22:636.1 specifically requires that notice of cancellation shall contain language indicative of intent to presently cancel, effective after the required number of days notice, as distinguished from intent to cancel at a future date. It appears that other jurisdictions have interpreted similar statutes to require notice clearly indicative of concurrent cancellation, effective on a date which will afford the insured the full statutory notice. See, for example, the source and authority cited in Ellzey, above.
Southern Farm cites Appelman Insurance Law and Practice, § 4185, page 543, and Johnson v. Nationwide Mutual Ins. Co., 4th Cir., 276 F.2d 574; Lievers v. National Ins. Underwriters, 257 Minn. 268, 101 N.W.2d 817, and Ralston v. Royal Ins. Co., Ltd. of Liverpool, 79 Wash. 557, 140 P. 552, as authority for the rule that a notice which states a policy will "stand cancelled, without further notice" is a valid notice of cancellation, and not just a statement of intent to cancel at a future date.
In addition, Southern Farm quotes Blashfield-Automobile Law and Practice, § 293.8, page 267, for the proposition that a notice is proper as a present cancellation, and is not notice of intent to cancel if it provides that the policy is "hereby cancelled *844 to take effect at a later date", unless premiums are paid in the meantime.
We detect a distinct difference in language which informs the insured that the policy "will be cancelled", and verbiage which states the policy "is cancelled", "is hereby cancelled", or "stands cancelled". In the first instance, there is no concurrent cancellation as of the notice, date, not even a conditional cancellation. We are of the view that the more equitable rule dictates an interpretation of the statute that requires expression of specific intent to cancel as of notice date, effective upon such date as will afford the insured at least the prescribed statutory notice. The notice in question did not cancel the policy at the time of notice, effective on a given future date. It merely informed the insured that unless the premiums due were paid, the policy would be cancelled. In our view, this amounted only to a demand for payment of premiums. It does not suffice as notice of cancellation.
Southern Farm's contention that Travelers is not entitled to judgment under the uninsured motorist clause of its policy, if Southern Farm's policy be held effective, is not reviewable under the procedural posture of this case. Travelers did not sue Southern Farm, and obtained judgment against Cotton, Blackwell and Jenkins only. Neither of said defendants have appealed. The judgment rendered in favor of Travelers is therefore final and res adjudicata as to defendants, Cotton, Blackwell and Jenkins. The effect of that judgment does not and cannot affect Southern Farm.
We find that the trial court erred in rejecting Southern Farm's claim for off-set because of a lack of proof. Our review of the record indicates that some amount of off-set is due, but that the precise amount thereof cannot be determined from the present state of the record.
It is shown that on February 26, 1969, Acaldo advised Cotton that a renewal premium of $3,272.83 was due which, if not paid, would result in cancellation effective March 8, 1969. Kimball's letter of March 19, 1969, notified Cotton that his coverage ceased March 8, 1969, and that an audit premium of $699.35 was due under the expired policy. Presumably this latter amount represented adjustments required by vehicles being added to the policy while it was in force. It further appears that while Cotton tendered certain checks in payment, at least two were dishonored. Additionally, on October 20, 1969, Cotton applied for reinstatement of his policy remitting a cashier's check for $4,004.56.
The testimony of Southern Farm's employee, Larry Andrew, account underwriter, leaves the record in a state of confusion concerning the amount owed and paid by Cotton. His testimony indicates that from the $4,004.56 check sent Southern Farm by Cotton in October, 1969, at least the audit premium of $699.35 mentioned in Kimball's letter of March 19, 1969, was deducted. Andrew's testimony also makes reference to a partial premium payment of $2,000.00, the effect of which is not entirely clear. Andrews' testimony also points out that the exact premium due could also be affected by the number and kinds of vehicles contained in Cotton's fleet, which the record does not fully show. We find that Southern Farm is entitled to a full opportunity to establish its claim to off-set.
As contended by Southern Farm, we find that the third party plaintiff claims of Blackwell and Jenkins are subject to the same conditions as Cotton's. This is necessarily so because these claims arise under the policy issued by Southern Farm. We think it would be anomalous indeed to hold that a nonowner insured under an automobile liability policy has greater rights and privileges than the owner who is responsible for payment of the premiums due.
Southern Farm contends the trial court's award of $750.00 to third party plaintiffs as attorney's fees is excessive and unsupported by evidence as to the amount of time spent on the case by counsel as required *845 by the jurisprudence. In support of this position, Southern Farm relies upon Bourgeois v. Great American Insurance Company, La.App., 222 So.2d 70, and Clemmons v. Zurich General Accident & Liability Insurance Company, La.App., 230 So.2d 887.
Relying on Brent v. Louisiana State Life Insurance Company, 7 La.App. 99, and Brooks v. Liverpool & London & Globe Insurance Company, La.App., 144 So. 788, third party plaintiffs contend the fixing of attorney's fees may be done under the supervision of the court which has personal knowledge of the work done by an attorney based on observation of the attorney in court. These authorities also hold that the court may fix attorney's fees without being furnished detailed information as to the time spent by the attorney in preparation for trial. The rationale of the rule is that the court, being experienced in such matters, is sufficiently knowledgeable to assess the value of services rendered without the aid of such data which, though helpful, is not indispensable.
The rule, as stated in Brent, above, is that where most of the services rendered are furnished under the eye of the court, the court may fix attorney's fees without hearing evidence as to the value thereof or time spent by the attorney in preparation for trial. Brent, above, is also authority for the rule that, under such circumstances, if evidence of the value of services were presented, the court would not be bound thereby. See also, Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12; Williams v. Ralph Miller Shows, La.App., 17 So.2d 67.
In the awarding of attorney's fees, trial courts are vested with broad discretion inasmuch as the trial judge is the one before whom the services are rendered, and who gains an intimate knowledge of the nature and complexity of the case as well as the quality and quantity of services rendered. Massey v. Consumer's Ice Co. of Shreveport, Inc., 223 La. 731, 66 So.2d 789.
We find no abuse of the discretion vested in the trial court with regard to the fixing of attorney's fees in this instance.
The judgment of the trial court is affirmed, as above indicated, and this matter remanded to the trial court for further proceedings consistent with the views herein expressed; all costs of these proceedings to date to be paid by appellant, Southern Farm.
Affirmed in part and remanded.