GARRETT, J.
| Safeway Insurance Company appeals from a trial court ruling which granted a motion for summary judgment in favor of Permanent General Assurance Corporation. For the following reasons, we affirm.
FACTS
On March 12, 2011, Jessyca Lewis was a passenger in a 1996 Toyota Avalon owned by Margaret Wilson and driven by Jibri Coleman. Keldrick Robinson was driving a 1989 Cadillac. There was a collision between the two vehicles. Lewis filed suit against Coleman; Permanent General Assurance Corporation (“Permanent”), the alleged insurer of Wilson and Coleman; Robinson; Progressive Paloverde (“Progressive”), the insurer of the vehicle driven by Robinson; and Safeway Insurance Company, the uninsured/underinsured motorist insurance carrier for Lewis. Lewis and Progressive reached a settlement and the matter between them was dismissed with prejudice.
Permanent filed a motion for summary judgment, contending that Wilson had failed to pay the policy premiums for insurance on the vehicle Coleman was driving at the time of the accident and that the policy had been cancelled on January 2, 2011.
Permanent attached to its original motion for summary judgment an affidavit from a company representative attesting that there was no policy in effect on the date of the accident; a “Notice of Cancellation,” dated December 21, 2010;[1] proof of the mailing of this notice; and a “Notice of Lapse” dated January 18, 2011. The “Notice of Cancellation” stated that a 12payment of $209.64 was due before January 2, 2011. The cancellation date of the policy was listed as 12:01 a.m. on January 2, 2011. The notice provided:

NOTICE OF CANCELLATION

Your policy with Permanent General Assurance Corporation is cancelled due to *494 non-payment of premium on the cancellation date and time shown above. This is the only notice of cancellation that you will receive. You can prevent cancellation by making your payment before 12:01 AM on the cancellation date. If you have made your payment, please disregard this notice. A check returned by your bank for any reason will not be considered valid premium payment to avoid cancellation.
Wilson failed to tender payment prior to the cancellation date and there is no evidence in the record to show that any payment other than the down payment made on December 2, 2010, was ever tendered by Wilson.
On January 13, 2011, Permanent also sent Wilson a “Notice of Lapse,” advising that the policy had been cancelled on January 2, 2011. The notice of lapse stated:
You are hereby given notice of the lapse of the above policy.
Cancellation reason: NON-PAYMENT CANCELLATION
The policy mentioned above has can-celled as of 12:01 A.M. on the cancellation date shown above, in accordance with the terms and conditions of the policy.
This document advised that the insurance carrier was required to report the matter to the Department of Public Safety and Corrections and that registration privileges could be revoked.
Permanent argued that these documents established that it complied with all legal requirements for cancellation of the policy and there was no coverage on the date of the accident, March 12, 2011. Because there was no [ coverage, Permanent contended that summary judgment should be granted in its favor.[2]
Safeway filed an opposition to the motion for summary judgment, arguing that Wilson did not receive proper notice of the cancellation of the policy for nonpayment and, therefore, Permanent still provided coverage for the vehicle. The exhibits attached to the opposition included, inter alia, the insurance policy with the declaration page, a declaration page after Wilson added a third vehicle, the schedule of payments, the down payment, coverage rates, proof of mailing of notices, and the notice of cancellation to Wilson.
The policy application shows that Wilson insured two cars on December 2, 2010.[3] Her premium for these two vehicles for six months was $744.00. On December 2, 2010, she made a 20 percent down payment of $148.80, which she paid with a credit card. Permanent produced a payment schedule for Wilson, showing that she was to make five payments of $125.04. The payment schedule listed the “cancel dates” as January 2, 2011; February 2, 2011; March 2, 2011; April 2, 2011; and May 2, 2011. |4The payment schedule specified that:
If the payment is not received before the cancel date, the policy will terminate.
*495 If you fail to pay before the cancellation date, you may be eligible to make a payment to reinstate your policy. However, there will be no coverage for losses occurring between the cancel and reinstate date.
The insurance policy stated that Permanent could cancel for nonpayment of the premium. The policy provided:
a. Nonpayment of premium means “your” failure to discharge when due any of “your” obligations in connection with the payment of premiums on this policy, or any installment of the premium, regardless of whether the premium is payable directly to “us” or “our” agent, or indirectly under any premium finance plan or extension of credit; or
b. At any time during the policy term if the cancellation is for nonpayment of premium, “we” may cancel the policy by mailing or delivering 10 days written notice of cancellation to “you” at the address shown on the declarations page and to any loss payee shown on the declarations page.
According to Safeway, Wilson’s premium was due on January 2, 2011, and until Wilson was actually in default, Permanent could not issue a valid notice of cancellation before the premium was due. Safeway contended that the notice of cancellation issued in this case was actually a notice of intent to cancel. Safeway argued that Louisiana law prohibits the issuance of a prospective notice of cancellation.
Permanent responded to Safeway’s opposition by arguing that (1) Safeway lacked standing to contest the cancellation, and (2) that the notice of cancellation was valid under Louisiana law.
|fiOn August 9, 2012, a hearing was held on the motion for summary judgment.[4] The trial court found that Safeway had standing to oppose the motion for summary judgment because it had a financial interest in the outcome of the dispute. The trial court observed that the notice of cancellation was “a little bit unusual” because it was sent before the premium was due, but the notice was not ambiguous.[5] The trial court stated that, even if the notice of cancellation was not an effective termination notice, the notice of lapse was sufficient to notify the customer that “they no longer have insurance.” The court observed that the accident occurred approximately 2½ months after the policy terminated and it would be unreasonable to extend the policy for that period of time. The trial court granted summary judgment in favor of Permanent. A judgment to that effect was signed on August 31, 2012. Safeway appealed.
NOTICE OF CANCELLATION
Safeway argues that the trial court erred in finding that the policy was properly cancelled for nonpayment and in finding that the insurer could issue a valid notice of cancellation for nonpayment prior *496 to the date that the premium was due. These arguments have no merit based upon prior cases |fifrom this circuit and the facts and circumstances applicable to this particular case.
Summary Judgment Law
Summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A). A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C. art. 966(C)(2). An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts |7showing that there is a genuine issue for trial. La. C.C. art. 967; Samaha v. Rau, supra.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991).
Notice of Cancellation Principles
La. R.S. 22:1266[6] regulates notices of cancellation for nonpayment of auto insurance premiums. The statute provides in pertinent part:
A. As used in this Part:
(1) “Policy” means an automobile liability ... policy, ... delivered or issued for delivery in this state, ... insuring a single individual or husband and wife resident of the same household, as named insured, and under which the insured vehicles therein designated are of the following types only:
(а) A private passenger vehicle that is not used as a public or livery conveyance for passengers, nor rented to others.
[[Image here]]
(б) “Nonpayment of premium” means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its *497 agent or indirectly under any premium finance plan or extension of credit.
B. (1) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons: (a) Nonpayment of premium.
_k- • • •
D. (1) No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason shall be given. In the event of nonpayment of premiums for a binder, a ten-day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail.
[[Image here]]
F. Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
[[Image here]]
J. Where written notice of cancellation or nonrenewal is required and the insurer elects to mail the notice, the running of the time period between the date of mailing and the effective date of termination of coverage shall commence upon the date of mailing. [Emphasis supplied.]
It is well settled that an automobile liability insurer has the burden of proving that the policy has been cancelled prior to the date of the accident giving rise to a claim under the policy, and the insurer must show facts which constitute positive and unambiguous proof of understanding of cancellation of the policy. Johnson v. Williams, 35,986 (La.App.2d Cir.9/18/02), 828 So.2d 90. The purpose of notice of cancellation to the insured is to make known to the insured that his policy is being terminated and to afford him sufficient time to obtain other insurance. Cockern v. Government Employees Ins. Co., 415 So.2d 330 (La.App. 2d Cir.1982).
| A demand for payment of balance due rather than an unequivocal notice of cancellation is insufficient to serve as a notice of cancellation. Hemperly v. Aetna Cas. & Sur. Co., 516 So.2d 1202 (La.App. 2d Cir.1987). Notice of intent to cancel for nonpayment is not the same as the notice of cancellation for nonpayment of a premium required by statute. See Hemperly v. Aetna Cas. & Sur. Co., supra; Carroll v. State Farm Mut. Auto. Ins. Co., 419 So.2d 57 (La.App. 2d Cir.1982). A notice of intent to cancel is nothing more than a demand for payment whereas a notice of cancellation puts an insured on notice that the policy will be cancelled. Dairyland Ins. Co. v. Marks, 468 So.2d 841 (La.App. 1st Cir.1985); Hemperly v. Aetna Cas. & Sur. Co., supra.
Discussion
According to Safeway, Louisiana law prohibits the prospective notice of cancellation. It asserts that such a notice must be construed as merely a notice of intent to cancel and does not satisfy the statutory notice requirements. Safeway argues that, if the premium was not paid on the date due, Permanent was required to give Wilson 10 days’ notice of cancellation after the due date. Safeway maintains that, under the statutory scheme for cancellation of policies, the date the premium is due and the date the policy is subject to cancellation can never be the same date.
*498 Our research indicates that Safeway’s position is not supported by the current case law from this circuit. There appears to be a split between the circuits as to whether a notice of cancellation for nonpayment of an auto insurance premium can be made prior to the date that the premium is due. | mThe second and fourth circuits have found that such a notice is valid. The first and fifth circuits have opined otherwise. However, it is important to note that each case has been decided upon its own unique facts and circumstances and the wording used in the notices sent out by the insurer. The documentation sent out by the insurance company must be carefully scrutinized and is critical in determining the appropriate outcome. In this particular case, the sequence of events was that Permanent sent out an invoice for payment on December 13, 2010. Thereafter, on December 21, 2010, the “notice of cancellation” was sent out. The record is clear that, in this case, the document sent on December 21, 2010, was not a bill, as the bill was sent out on December 13, 2010. The record is also clear that the notice of cancellation was not ambiguous. The real issue is the timing of the notice.

Second and Fourth Circuit Jurisprudence

In Folds v. Protective Cas. Ins. Co., 26,323 (La.App.2d Cir.12/7/94), 647 So.2d 1215, the vehicle owner purchased insurance on May 15, 1986. The policy had various policy periods of approximately 30 days with the final period from August 21 to September 21, 1986. On September 5, 1986, the insurer sent a notice of cancellation, informing the insured that the policy had been cancelled for nonpayment of the premium, effective September 21, 1986, at 12:01. The notice indicated that payment was due on September 21, 1986. The insured did not pay the premium for this policy period until September 24, 1986. On September 23,1986, one day before the payment was made, the insured allowed someone to drive her [ nvehicle. The driver was involved in an accident in which the plaintiff was injured.
This court, in an opinion authored by Judge Stewart, held that the insurance policy was properly cancelled prior to the accident and there was no coverage. The notice was not merely a demand for payment or a notice of intent to cancel, but was a notice of cancellation mailed to the insured, giving at least 10 days’ notice of cancellation as required by statute. Notably, the notice of cancellation for nonpayment of a premium was given prior to the date the premium was due and the cancellation was effective on the date the premium was due.
Later, this court decided Johnson v. Williams, supra, authored by Judge Williams. In that case, the insured’s son was involved in an auto accident on April 6, 1997, while driving a vehicle owned by the insured. Omni, the insurer, filed a motion for summary judgment claiming that the insurance policy was cancelled prior to the accident for nonpayment of the premium. The motion for summary judgment was granted by the trial court. This court reversed, finding that there was a question of fact as to a collection letter sent to the insured on April 2,1997. After a trial on the merits, the trial court found that insurance coverage existed. This court then reversed the trial court decision, finding that there was no insurance coverage.
The insured made only one installment payment on the insurance premium by check which was returned for insufficient funds. A notice of cancellation was sent to the insured on February 11, 1997, informing him |12that the insurance would be cancelled effective February 23,1997. We found that the notice language was clear, *499 unequivocal, and unambiguous and the cancellation was timely and valid.
The fourth circuit has followed the second circuit. In Narcisse v. Evans, 2001-1092 (La.App.4th Cir.1/16/02), 807 So.2d 339, Evans, the defendant, had a policy of auto insurance with Clarendon. The policy period was from June 29, 1995, through December 29, 1995. The premium was to be paid in five installments due on the 19th of each month beginning in July. On July 10, 1995, Clarendon sent a notice to Evans informing him that his premium was due on July 19, 1995, and would be cancelled effective July 30, 1995, at 12:01 a.m. if not paid. Evans received the notice and did not pay the premium.
On August 5, 1995, Evans had an auto accident and struck a vehicle occupied by the plaintiffs. The plaintiffs filed suit and Clarendon filed a motion for summary judgment alleging that it did not provide coverage for the accident. The fourth circuit affirmed the trial court ruling granting summary judgment in favor of Clarendon. The fourth circuit concluded that the notice sent to Evans was an unambiguous and unequivocal notice of cancellation and the notice complied with the applicable statute. Therefore, Clarendon did not provide coverage for the accident.

First and Fifth Circuit Jurisprudence

Safeway mainly relies on State Farm Mut. Auto. Ins. Co. v. Villneuve, 98-2421 (LaA.pp.1st Cir.12/28/99), 747 So.2d 777, writ denied, 2000-0273 (La.3/24/00), 758 So.2d 156, in support of its position. In Villneuve, | lsReliance issued a policy of auto insurance to Villneuve. The policy period was January 21, 1995, through July 20, 1995. The premiums were payable in six monthly installments. Villneuve failed to pay the premium due on February 20, resulting in cancellation of the policy. The policy was reinstated March 11, upon payment of the premium. He paid the premium due on April 8, and another premium was due on May 8, 1995, to cover the period from May 8 through June 7, 1995. On April 18, 1995, 20 days before the May 8 premium was due, Reliance mailed a premium due notice to Villneuve which stated that the policy would be cancelled for nonpayment of premium at 12:01 a.m. on May 8, 1995, if not paid by the due date. Villneuve did not pay the premium due on May 8 until May 30,1995. On May 24, 1995, Villneuve was involved in an auto accident.
Reliance filed a motion for summary judgment, claiming that there was no coverage for the accident, arguing that the policy was cancelled on May 8, 1995, and reinstated on May 30, but the reinstatement was not retroactive. The trial court denied the motion, finding that the notice sent to Villneuve did not comply with the 10-day notice requirement because “notice could not be sent before the premium payment became due.” The trial court reasoned that the notice statute contemplates a minimum 10-day grace period between the premium due date and the effective date of any cancellation.
The first circuit affirmed, reasoning that the notice conditioned cancellation of the policy on nonpayment of the premium. The first circuit found that the notice issued by Reliance lacked unequivocal cancellation | ^language. The first circuit found that the language was similar to that in Dairyland Ins. Co. v. Marks, supra,[7] *500 and concluded that the notice given by Reliance was merely a demand for payment, specifying that the policy would be cancelled if the premium was not paid.
Although not cited by Safeway, our research reveals another recent case decided by the first circuit which follows Vill-neuve. In Wiley v. Cornerstone Nat. Ins. Co., 2012-0909 (La.App.1st Cir.4/25/13), 2013 WL 1792512, an unpublished case,[8] the plaintiffs were involved in an auto accident on May 13, 2009. They sued the driver of the other vehicle involved in the accident and her insurer, Cornerstone. Cornerstone filed a motion for summary judgment, asserting that its policy did not provide coverage for the accident because it was cancelled on April 11, 2009, for nonpayment of the premium. Cornerstone argued that on March 13, 2009, it sent a premium due notice to its insured informing her that a payment was due on April 2, 2009, and that the policy would be cancelled on April 11, 2009, if the payment was not postmarked by that date. The bottom of the [1spremium due notice contained language concerning “Notice of Intent to Cancel for Non-Payment of Premium.” The insured did not pay the premium.
The first circuit followed Villneuve and Travelers Ins. Co. v. Jenkins, 285 So.2d 839 (La.App. 1st Cir.1973),[9] finding that the notice was a notice of intent to cancel and not a notice of cancellation as required by statute. The first circuit found that Cornerstone’s notice was not an unconditional, unequivocal notice of cancellation as required by statute and by Jenkins and Villneuve. The court reasoned that Cornerstone’s notice did not initiate the cancellation of the policy. Rather, the company was sending its insured a bill for a payment due in the future. The court noted that at the time the notice was sent, *501 there was no outstanding premium due and the nonpayment of the premium had not yet occurred. The first circuit found that the Cornerstone notice, combined with a premium invoice and conditioned on the nonpayment of the premium by the due date, constituted a demand for payment and not an unequivocal notice of cancellation.
hfiThe first circuit also observed that the purpose of La. R.S. 22:1266(D) is to protect the insured against the danger of losing insurance coverage through mere neglect to pay a premium by ensuring that the insured is notified that a policy is being terminated in sufficient time to obtain insurance coverage. The court stated that allowing an insurer to satisfy La. R.S. 22:1266(D)’s strict requirements by merely sending notices of cancellation for nonpayment in every premium invoice, at a time when the policy premiums are current and there is not yet a basis for cancellation, would defeat the purpose of La. R.S. 22:1266(D) and render its protections meaningless. Notably, the first circuit focused on the notice given before the payment was due and did not discuss the obvious fact that the notice sent in that case was clearly labeled a “notice of intent to cancel,” rather than a notice of cancellation.[10]
Although not cited by Safeway, our research also indicates that the fifth circuit has followed the reasoning of the first circuit. In Direct General Ins. Co. of La. v. Mongrue, 04-248 (La.App.5th Cir.8/31/04), 882 So.2d 620, Direct General’s insured was involved in an auto accident on April 28, 2001. The other driver was insured by Southern Farm. Southern Farm filed a motion for summary judgment claiming that the insurance policy between Southern Farm and its insured was cancelled for nonpayment of the premium before the date of the accident. According to Southern Farm, a notice of cancellation of the policy was sent to its insured on March 14, 2001, stating that the cancellation date was March 29, 2001, 117and the account due date was also March 29, 2001. Direct General argued that Southern Farm failed to prove that the nonpayment occurred prior to the cancellation date because the due date for payment and the cancellation date were the same, March 29, 2001. Direct General argued that this created ambiguity in the notice. A prior invoice added to the confusion and internal documentation submitted by Southern Farm showed that the notice mailed on March 14 was an expiration notice and not a cancellation notice. Based upon these ambiguities, the fifth circuit found that Southern Farm failed to prove that the policy was properly can-celled prior to the date of the accident.

Analysis

Based upon the prior decisions in this circuit in Folds v. Protective Cas. Ins. Co., supra, and Johnson v. Williams, supra, and the fact that, in this case, the notice of cancellation was clear and unambiguous, we reject Safeway’s argument that a notice of cancellation can never be given before the premium is due. The statutory scheme of La. R.S. 22:1266 does not support such a position. The statute requires nonpayment of a premium, which means the failure of the insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit. The statute requires that when cancellation is for nonpayment of premium, at least 10 days’ notice of cancellation, [ 1saccompanied by *502 the reason, shall be given. There is no requirement in the statute that the premium be in default when the notice is sent.
The relevant features in determining whether a notice of cancellation is valid are that it be given 10 days before cancellation and that the notice language be clear, unequivocal and unambiguous.
Language providing the insured with the opportunity to prevent cancellation of his policy does not necessarily constitute either a mere demand for payment or a notice of intent to cancel where the notice itself includes clear and unequivocal language giving notice to the insured that the policy has been cancelled effective on the cancellation date set forth in the notice. Hemperly v. Aetna Cas. & Sur. Co., supra.
The application made by the insured in this case and the payment schedule clearly specified that the policy would be cancelled on the date the payments were due if they were not made. Further, Permanent mailed a separate invoice to Wilson on December 13, 2010, with a payment voucher to be returned with her payment of $209.64. This document provided that, “In addition to this invoice, a notice of cancellation will be mailed to you at least ten (10) days before your policy cancels.” Accordingly, this shows that Wilson received an invoice for her insurance premium prior to receiving the notice of cancellation. The notice of cancellation was not a mere demand for payment or a notice of intent to cancel as argued by Safeway.
Here, as in Folds v. Protective Cas. Ins. Co., supra, and Johnson v. Williams, supra, the language of notice of cancellation was clear, 11S)unequivocal and unambiguous. It conveyed the cancellation of the policy for nonpayment of the premium and was not simply an intent to cancel the policy. The notice of cancellation gave the insured 10 days’ notice of the cancellation accompanied by the reason for cancellation. There is no issue concerning receipt by the insured of the notice of cancellation. The accident in this case occurred more than two months after the premium was due. Permanent has carried its burden of proving that the insurance policy was cancelled prior to the date of the accident. The trial court correctly found that the notice of cancellation was not ambiguous and was valid and timely and that Permanent did not provide coverage for this accident.
NOTICE OF LAPSE
Safeway contends that the trial court erred in finding that the notice of lapse in coverage cured any lack of statutory notice of cancellation. This assignment of error is moot because we find that the notice of cancellation in this case was made in accordance with the applicable statutory requirements and prior jurisprudence from this circuit.
CONCLUSION
For the reasons stated above, we affirm the trial court ruling granting summary judgment in favor of Permanent General Assurance Corporation and rejecting the demands of Safeway Insurance Company against it. All costs in this court are assessed to Safeway.
AFFIRMED.
BROWN, Chief Judge, dissents with written reasons.

. A copy of the "Notice of Cancellation” is attached as an appendix to this opinion for ready reference.

. The brief in support of the original motion for summary judgment filed by Permanent on March 8, 2012, alleged that the notice of cancellation was sent after her premium payment had not been received. Safeway’s attorney questioned this after reviewing the notice relied on by Permanent. Safeway engaged in additional discovery due to issues concerning the sequence of events. After receiving the additional discovery, Safeway filed its opposition to the motion for summary judgment on May 8, 2012. The documents produced in discovery were attached to Safeway's opposition and were made a part of the record.

. On December 8, 2010, Wilson added a third vehicle to the policy for an additional premium.

. The attorneys for the plaintiff and Coleman did not file any oppositions to the motion for summary judgment filed by Permanent. There is no indication in the record that Wilson ever questioned or contested the cancellation of the policy. At the hearing on the motion for summary judgment, the only participants were Permanent and Safeway. They did not provide the lower court with all of the authorities they are now citing to this court or the cases found by this court. It appears that this case has “evolved” somewhat as the legal issues have been fleshed out and additional documents were produced during discovery.

. In rendering its ruling, the trial court did not expressly note for that record that an invoice demanding payment had also been sent out on December 13, 2010. That invoice provided, "In addition to this invoice, a notice of cancellation will be mailed to you at least ten (10) days before your policy cancels.”

. This provision was previously found in La. R.S. 22:636.1. La. Acts 2008, No. 415, § 1, amended and reenacted Title 22 of the Louisiana Revised Statutes of 1950, the Louisiana Insurance Code, and directed the Louisiana State Law Institute to redesignate the provisions of Title 22, formerly comprising La. R.S. 22:1 to 22:3311, into a new format and numbering scheme comprised of La. R.S. 22:1 to 22:2371, without changing the substance of the provisions. The Act became effective on January 1, 2009.

. In Dairyland Ins. Co. v. Marks, supra, the defendant had insurance with State Farm and financed the premiums with a finance company. He was to pay the premium on the 11th of each month. He paid the November premium on November 18, 1981, and the December premium on December 11, 1981. The payments were accepted. The defendant was sent a notice that the policy would be can-celled on December 15, 1981, if payment was *500 not received within 10 days of the notice. The defendant caused a rear-end accident on December 18, 1981. State Farm argued that the policy was cancelled on December 15, 1981, three days before the accident. The first circuit found that the notice was a notice of intent to cancel and not a notice of cancellation. Because there was no notice of cancellation, the policy was in effect when the accident occurred. However, the first circuit also noted that the defendant had, in fact, paid the premium.

. La. C.C.P. art. 2168 provides:
A. The unpublished opinions of the supreme court and the courts of appeal shall be posted by such courts on the Internet websites of such courts.
B. Opinions posted as required in this Article may be cited as authority and, if cited, shall be cited by use of the case name and number assigned by the posting court.

. In Travelers Ins. Co. v. Jenkins, supra, Southern Farm Bureau Insurance argued that it did not provide coverage for a vehicle involved in an accident on July 19, 1969. The owner of the vehicle had an insurance policy with Southern which terminated on February 5, 1969. On February 2, 1969, Southern sent tile insured a notice that the renewal premium was due and coverage would cease on March 8, 1969, if the premium was not paid. On March 19, 1969, Southern sent a letter to the insured, advising that coverage ceased on March 8, 1969. The insured made a payment, but his check was returned for insufficient funds. On April 11, 1969, Southern sent a letter informing the insured that coverage was reinstituted on April 3, 1969. An additional amount was required to pay the policy in full through April 3, 1970. After the insured’s check was again dishonored, his coverage was extended to May 30, 1969, to permit him to provide payment. On May 29, 1969, the insured sent another check which was dishonored and Southern gave the insured until 12:01 a.m. on July 11, 1969, to make payment. The insured paid on July 11, 1969, but after 12:01 a.m. On July 25, 1969, Southern returned the check to the insured with a letter stating that the policy was can-celled on April 3, 1969. The first circuit found that the insured was merely informed of Southern’s intent to cancel the policy. He did not receive the statutorily required notice of cancellation.

. Judge Parro dissented and agreed with this court’s decision in Folds.