GARRETT, J.
l,The plaintiff in this medical malpractice suit, Joel Tatum, appeals a trial court ruling which granted summary judgment in favor of the defendant, Dr. Pankajrai Shroff. We reverse the trial court judgment and remand for further proceedings.
FACTS
Frank Tatum, the plaintiffs father, became a patient of Dr. Shroff in 2003. Mr. Tatum’s medical history included diabetes, hypertension, osteoarthritis, cervical spinal stenosis, and deep vein thrombosis (DVT). On January 18, 2010, he saw Dr. Shroff, complaining of shortness of breath, intermittent confusion and edema of both legs. The doctor admitted Mr. Tatum to Caldwell Parish Hospital Service District No. 1, d/b/a Citizens Medical Center (CMC), for observation and monitoring. On January 22, 2010, the 79-year-old patient was found to be unresponsive, and a code was called. He was transferred to Rapides Regional Medical Center (RRMC), where he was pronounced dead later that afternoon. No autopsy was performed.
The plaintiff filed a medical malpractice complaint against CMC and Dr. Shroff, which asserted that they failed to timely diagnose and treat a pulmonary embolism and/or DVT and failed to provide treatment which met the applicable standard of care. The complaint was submitted to a medical review panel (MRP), pursuant to the Louisiana Medical Malpractice Act. On November 10, 2011, the MRP issued an opinion unanimously finding that neither CMC nor Dr. Shroff breached the applicable standard of care. As to Dr. Shroff, the MRP concluded that blood gas, clinical and X-ray ^findings were consistent with his diagnosis of hypoventilation syndrome with right heart failure and that he ordered appropriate treatment. It found that prior to January 21, 2010, there were no clinical findings to suggest acute DVT, and that when symptoms suggestive of it manifested, Dr. Shroff ordered a venous Doppler test. According to the MRP’s opinion, the radiologist’s report indicated positive DVT' in the right leg, and Dr. Shroff ordered appropriate medication. The MRP further concluded that there was a “high likelihood” that the test findings were residual findings from a prior DVT because a D-dimer test performed at RRMC was nor *563 mal. The MRP found that such a finding “virtually excludes the probability” that Mr. Tatum had an acute pulmonary embolism because “a normal D-dimer study excludes acute PE and acute DVT with 95% sensitivity.”
In January 2012, the plaintiff filed suit against Dr. Shroff and CMC, asserting medical malpractice in their treatment of his late father. More specifically, he alleged that they failed to timely diagnose and treat a pulmonary embolism and/or DVT. Dr. Shroff filed an answer which incorporated a dilatory exception of vagueness and ambiguity and a motion to strike. He admitted that Mr. Tatum presented to his office on January 18, 2010, and that a venous Doppler study was performed on January 21. Dr. Shroff complained that certain paragraphs of the petition were vague and ambiguous, and he requested that they be stricken. Dr. Shroffs exception of vagueness and ambiguity and motion to strike were granted by consent judgment in March 2012.
| sIn September 2012, Dr. Shroff filed a motion for summary judgment. He asserted that the plaintiff had failed to identify any expert witness to refute the findings of the MRP. Relying upon the favorable MRP opinion and the plaintiffs failure to identify an expert witness, Dr. Shroff requested summary judgment dismissing him from the suit.[1]
In opposition, the plaintiff filed a letter affidavit dated December 27, 2012, from Dr. Michael Langan, a physician at Massachusetts General Hospital, who is affiliated with Harvard Medical School and board certified in internal medicine with an added qualification in geriatric medicine. In his affidavit, Dr. Langan recited a review of Mr. Tatum’s medical records from Dr. Shroffs office and from CMC. Among other things, these records showed a 2008 history of DVT in the right leg. The records from Mr. Tatum’s January 2010 hospitalization were discussed in detail, including the discharge summary in which Dr. Shroff stated that the cause of Mr. Tatum’s cardiopulmonary arrest was “either he may have had a massive pulmonary embolism, could have had cardiac ar-rhythmias, or he may have had a myocar- • diac infarction.”
Dr. Langan stated that it appeared obvious that Mr. Tatum’s death was attributable to a pulmonary embolism. He opined that Mr. Tatum’s admission symptoms, laboratory results and echocardiogram were most consistent with a pulmonary embolism. He stated that Dr. Shroff was negligent in Mr. Tatum’s care in the following ways:
|4(1) Failing to timely diagnose cardiac dysfunction as the cause of bilateral lower extremity edema, “[f]rom the beginning of his treatment to Mr. Tatum in 2003 until his death in 2010.” This included failure to refer Mr. Tatum to a cardiologist or order appropriate studies (echocardiogram, stress test, etc.) that, “more likely than not, would have revealed congestive heart failure with increased pulmonary artery pressures (cor pulmonale)”;
(2) Failing to correctly interpret numerous EKGs performed on Mr. Tatum;
(3) Failing to treat congestive heart failure in Mr. Tatum;
(4) Failing to treat Mr. Tatum with anti-coagulation for DVT.
Dr. Langan concluded by stating that “[m]ore likely than not, and with a reasonable degree of medical certainty, Dr. *564 Shroffs failure to timely diagnose and treat Mr. Tatum’s congestive heart failure resulted in his death.”
In February 2018, Dr. Shroff filed a motion to strike most or all of Dr. Lan-gan’s affidavit as being irrelevant or immaterial to the issues in the instant suit. In particular, he argued that, the plaintiff had failed to allege any malpractice prior to Mr. Tatum’s January 2010 admission to CMC and that any such claims of prior malpractice were not submitted to the MRP. The plaintiff opposed the motion to strike.
On October 3, 2018, the trial court issued a rather unusual written ruling which granted the motion to strike, ordering that all references in the affidavit pertaining to any suggested acts of malpractice prior to January 22, 2010, be stricken. It found that there were no allegations in the original petition or the MRP opinion as to any malpractice on any date other than January 22, 2010, and the provisions of La. R.S. 40:1299.47 required that the defendant be notified of the specific dates of malpractice. On October | ¡¡22, 2013, the plaintiff filed a motion for new trial. Pursuant to a consent judgment signed on January 21, 2014, the motion for new trial was granted in part and denied in part. Specifically, the court struck all reference to any suggested acts of malpractice prior to the hospital admission which began January 18, 2010. The affidavit was also stricken insofar as it attempted to raise allegations about that hospital admission not previously asserted to and reviewed by the MRP. The consent judgment did not contain any specific detail as to which portions of Dr. Langan’s affidavit were considered to be stricken or not stricken.
Against this procedural background, Dr. Shroff re-urged the motion for summary judgment. On April 14, 2014, the trial court issued brief written reasons granting the motion for summary judgment. After reviewing the affidavit of Dr. Langan, which was limited by the consent judgment to the period beginning January 18, 2010, the court observed that, in its view, the plaintiff’s expert offered no specific tests or treatment that Dr. Shroff failed to do, other than referring Mr. Tatum to a specialist. It then observed that the MRP specifically found Dr. Shroffs care and treatment to be within the standard of care. The trial court concluded that it was not convinced that the plaintiff could meet his burden of proof or prevail at a trial.
Judgment granting Dr. Shroffs motion for summary judgment and dismissing the plaintiffs claims against him with prejudice was signed on April 24, 2014. The plaintiff appealed;
lfiLAW
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991); Lewis v. Coleman, 48,173 (La.App.2d Cir.6/26/13), 118 So.3d 492, writ denied, 2013-1993 (La.11/15/13), 125 So.3d 1108.
Summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that *565 the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to 17satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C. art. 966(C)(2).
An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. La. C.C. art. 967(B); Samaha v. Rau, supra; Lewis v. Coleman, supra.
This provision initially places the burden of producing evidence-at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Samaha v. Rau, supra. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Samaha v. Rau, supra; Foster v. Patwardhan, 48,575 (La.App.2d Cir.1/22/14), 132 So.3d 495, writ denied, 2014-0614 (La.4/25/14), 138 So.3d 1233.
A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Stated another way, a “material fact” is one in which “its existence |8or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.” Samaha v. Rau, supra.
A genuine issue exists where reasonable persons, after considering the evidence, could disagree. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Toston v. St. Francis Med. Ctr., Inc. ex rel. Bd. of Supr’s of La. State Univ. & Agr. & Mech. Coll., 47,529 (La.App.2d Cir.12/17/12), 108 So.3d 197.
Even though summary judgment is now favored, it is not a substitute for trial on the merits, and it is inappropriate for- judicial determination of subjective facts, such as motive, intent, good faith or knowledge that call for credibility evaluations and the weighing of the testimony. Tillman v. Eldridge, 44,460 (La.App.2d Cir.7/15/09), 17 So.3d 69. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. Tillman v. Eldridge, supra.
To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care *566 and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Samaha v. Rau, supra; Foster v. Patwardhan, supra.
J^ARGUMENTS ■
The plaintiff argues that the trial court erred in granting the motion for summary judgment, maintaining that Dr. Langan’s affidavit created a genuine issue of material fact as to whether Dr. Shroff breached the standard of care during the hospitalization of Mr. Tatum beginning on January 18, 2010. Although he asserts that Dr. Langan cited several deficiencies in Dr. Shroffs actions, the plaintiff contends that just the failure to refer his father to a cardiologist during the hospitalization alone would be an alleged breach of care and sufficient to defeat summary judgment. He also criticizes the trial court for giving “extraordinary weight” to the MRP opinion, essentially finding it more persuasive than Dr. Langan. According to the plaintiff, the opinions expressed in his expert’s affidavit, taken together with the MRP opinion, illustrate the existence of numerous contested material facts. The plaintiff further contends that Dr. Shroff interpreted the consent judgment too narrowly. Since some of Dr. Langan’s opinion addressed violations occurring “until [Mr. Tatum’s] death in 2010,” the plaintiff argues that they encompass the January 2010 hospitalization and give rise to genuine issues of material fact defeating summary judgment.
Dr. Shroff argues that much of Dr. Lan-gan’s affidavit is excluded from consideration because the plaintiff’s MRP complaint only asserted negligence during Mr. Tatum’s January 2010 hospital admission and specified that the alleged negligence was failing to timely diagnose and treat a pulmonary embolism and/or DVT and failing to provide treatment which 11ftmet the applicable standard of care. Accordingly, the consent judgment limited the opinions in Dr. Langan’s affidavit to any alleged malpractice that arose from Mr. Tatum’s hospitalization between January 18, 2010, to January 22, 2010, and was submitted to the MRP. Dr. Shroff contends that the remaining portions are insufficient to create genuine issues of material fact which would preclude summary judgment.
DISCUSSION
Although the consent judgment limited Dr. Langan’s affidavit to only the events surrounding Mr. Tatum’s January 2010 hospitalization and the issues presented to the MRP, our de novo review demonstrates that, even with these restrictions, there are still genuine issues of material fact precluding summary judgment. Dr. Langan opined that Dr. Shroff was negligent in his treatment of Mr. Tatum in several respects, including his failure to treat his patient with an anticoagulant for DVT and to refer him to a cardiologist. These alleged acts of negligence are asserted to have continued up until his death, which occurred during the January 2010 hospitalization. These assertions of malpractice stand in stark contrast to the MRP opinion. These opposing views cannot be reconciled without making credibility determinations. Such credibility calls are prohibited in ruling on a motion for summary judgment. A fair reading of the written ruling by the trial court in this case indicates that the trial court made some improper credibility calls which are more appropriately made by the trier of fact during trial.
In Based on the foregoing, we find that summary judgment was not appropriate. Accordingly, we reverse the trial court ruling granting summary judgment in favor *567 of Dr. Shroff and dismissing the plaintiffs claims.
CONCLUSION
The ruling granting summary judgment in favor of Dr. Shroff is reversed. The matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to Dr. Shroff.
REVERSED AND REMANDED.

. CMC also filed a motion for summary judgment, which was granted by a consent judgment in January 2013. All of the plaintiff’s claims against CMC were dismissed with prejudice at the plaintiff's costs, while all of his rights against Dr. Shroff were reservéd.