Judgment rendered November 18, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,282-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DOUGLAS BAGWELL                                Respondent

versus

QUALITY EASEL COMPANY,                         Applicants
INC., AND JAMES E.
DUGDALE, JR.

* * * * *

On Application for Writs from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 58391

Honorable Bruce Edward Hampton, Judge

* * * * *

NELSON, ZENTNER, SARTOR                Quality Easel Company, Inc.,
By: George Marion Snellings IV         and James E. Dugdale, Jr.

WILLIAM KYLE GREEN

TAYLOR, WELLONS, POLITZ, &
DUHE, APLC
By: Charles J. Duhe, Jr.
    Paul J. Verlander
    Lindsay C. Rabalais

COX, COX, FILO, CAMEL                  Counsel for Respondent,
By: Kevin Louis Camel                  Douglas Bagwell

MORRIS & DEWETT, LLC
By: Brandon Trey Morris
    Justin C. Dewett

BIENVENU, BONNECAZE, FOCO      Counsel for Intervenor
By: Colin P. O'Rourke      Respondent, Stonetrust
Commercial Insurance
Company

GALLOWAY, JOHNSON, TOMPKINS      Counsel for Defendant
By: Mark E. Seamster      Respondent, Atlantic Casualty
Insurance Company

\* \* \* \* \*

Before GARRETT, STONE, and STEPHENS, JJ.

**STEPHENS, J.**

Quality Easel Company, Inc., ("QEC") and James Dugdale, Jr., (collectively, "the Defendants") sought supervisory review of the denial of their motion for summary judgment by the Third Judicial District Court, Lincoln Parish, Louisiana. The Defendants' motion addressed the issue of workers' compensation immunity under La. R.S. 23:1032 as to the personal injury claims by plaintiff/employee, Douglas Bagwell. Considering the issue to be decided, we granted the Defendant's writ application to docket for further review of the record. For the following reasons, we grant the Defendants' writ, make it peremptory, and reverse the trial court's judgment denying their motion for summary judgment. The Defendants' motion for summary judgment is granted.

## FACTS AND PROCEDURAL BACKGROUND

This matter arises from an accident that occurred on September 2, 2015, at the Tremont westbound highway rest area ("the Tremont project") off Interstate 20 near Choudrant, Louisiana. Plaintiff Douglas Bagwell, who had been employed with QEC for several months, was tasked with driving a truck to transport concrete barriers from the job site to a storage yard. Dugdale, the sole owner and manager of QEC, was also there and was using a trackhoe to lift the concrete barriers onto the truck. As Dugdale was moving one of the barriers, the barrier rolled onto Bagwell and crushed his legs. Due to injuries sustained in the accident, part of Bagwell's right leg ultimately was amputated.[1]

---

[1] The deposition testimony of some parties shows discrepancy regarding the actual details of the accident, but those discrepancies have no bearing on the issues on review.

In an original petition and various amended and supplemental petitions, Bagwell brought personal injury claims against Dugdale and QEC, along with insurers Atlantic Casualty Insurance Company and Zurich American Insurance Company.[2]  According to Bagwell, at the time of the accident, Dugdale was working in the course and scope of his employment with QEC, and Dugdale's negligence in operating the equipment caused his injuries.  Bagwell also claimed that Dugdale was negligent for improperly modifying the trackhoe he was operating, and this modification created a dangerous defect that was a contributing cause of the accident.  Bagwell alleged QEC was vicariously liable for Dugdale's negligence, and QEC was additionally liable for failing to properly train and supervise its employees, to implement appropriate safety procedures, and to comply with industry standards.

In response, the Defendants filed a motion for summary judgment.  In that motion, the Defendants maintain that workers' compensation laws barred Bagwell's tort claims because at the time of the accident, both Bagwell and Dugdale were payroll employees of Chad Pody Construction Company ("CPCC"), the company which was serving as a subcontractor for the prime contractor for the Tremont project.[3]  Defendants rely on *Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981), for the proposition that a worker who negligently injures one of his coworkers is protected from tort liability

---

[2] The claims against Zurich ultimately were dismissed pursuant to its motion for summary judgment.

[3] Although styled as a motion for summary judgment, the Defendants' pleading actually only sought partial summary judgment on the issue of workers' compensation immunity as to the claim that Dugdale was liable for acting negligently in moving the barrier and the claim that QEC was vicariously liable for Dugdale's actions.  The motion did not address Bagwell's other claims against Dugdale and QEC (*i.e.*, the modification of the trackhoe which allegedly created a dangerous defect in the equipment).

2

pursuant to the workers' compensation exclusive remedy statute. Included in these filings were affidavits of the involved parties as well as transcripts of depositions given by Bagwell, Dugdale, and CPCC owners Chad Pody and Angela Pody. The Defendants' motion noted that Bagwell was receiving workers' compensation benefits (indemnity and medical benefits) from CPCC's workers' compensation insurer.

Bagwell filed an opposition and two supplemental oppositions to the Defendants' motion. Deposition transcripts of other QEC employees hired by CPCC as payroll employees for the Tremont project were provided during the pendency of the motion. Bagwell also filed a cross-motion for summary judgment, which was ultimately denied by the trial court but is not under review.

After a series of delays for additional discovery and depositions, the parties appeared on March 14, 2019, for oral arguments on the motions, and the trial court took the matter under advisement.[4] In written reasons for judgment, the trial court concluded a genuine issue of material fact remained regarding the employment status of Dugdale, QEC, and Bagwell. Although concerned that Bagwell denied employment with CPCC but admitted receiving workers' compensation benefits, the trial court determined this fact did not establish that Bagwell was, in fact, a payroll employee of CPCC. After considering the definition of "employee" in Black's Law Dictionary and the criteria cited in jurisprudence to determine whether someone was an independent contractor or an employee, the trial court concluded the

---

[4] Post-hearing, Bagwell sought to introduce an affidavit by a former QEC employee named Charles Ray Jenkins, but the Defendants filed a motion to strike the affidavit as untimely filed. At a hearing on April 11, 2019, the motion to strike was granted.

Defendants were not entitled to summary judgment on the issue of tort immunity under the workers' compensation law, La. R.S. 23:1032. The trial court concluded a determination that Dugdale was employed by CPCC required a credibility determination which would be improper on a motion for summary judgment. A written judgment followed on August 22, 2019, and the Defendants' application for supervisory review of the ruling followed. Considering the issues involved, we granted the writ to docket for further review.

**DISCUSSION**

*Motion for Summary Judgment*

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So. 3d 1002. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover can meet this burden by filing supporting documentary evidence consisting of pleadings, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966(A)(4); *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 2017-01251 (La. 10/27/17), 228 So. 3d 1230. Procedurally, therefore, the court's first task is to determine whether the moving party's motion, memorandum, affidavits, and supporting documents are sufficient to resolve all material

4

factual issues. *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512 (La. 7/5/94), 639 So. 2d 730.

If we determine that the moving party has met this onerous burden, the burden then shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "At that point, the party who bears the burden of persuasion at trial . . . must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial." *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So. 2d 880, 883.

In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 2017-1112 (La. 6/27/18), 250 So. 3d 874. A "genuine issue" is a triable issue, an issue on which reasonable persons could disagree. *Champagne v. Ward*, 2003-3211 (La. 1/19/05), 893 So.2d 773; *Bloxham v. HDI-Gerling Am. Ins. Co.*, 52,177 (La. App. 2 Cir. 6/27/18), 251 So. 3d 601.

In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. *Tatum v. Shroff*, 49,518 (La. App. 2 Cir. 11/19/14), 153 So. 3d 561. The trial court cannot make credibility calls on a motion for summary judgment, but must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. *Bloxham v. HDI-Gerling Am. Ins. Co.*, *supra*.

5

A motion for summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Maggio*, *supra*.

*Dugdale's Employment Status*

In their motion for summary judgment, the Defendants argued that because Bagwell and Dugdale were co-employees both working in the course and scope of their employment at the time of the accident, Bagwell's exclusive remedy for an unintentional tortious act was the workers' compensation benefits Bagwell was already receiving from CPCC. Specifically, as a result of Dugdale's employment status with CPCC, Defendants argued that under La. R.S. 23:1032, Bagwell was precluded from suing his co-employee, Dugdale, for an unintentional tort based upon the injuries he sustained in the work-related accident. Louisiana R.S. 23:1032, in pertinent part, provides that workers' compensation is the exclusive remedy granted to an employee for a work-related injury caused by a nonintentional act and is exclusive of all claims that might arise against a co-employee or the employer.

On the other hand, Bagwell argues the trial court properly denied Defendants' summary judgment motion because genuine issues of material fact remained on the determinative issue of whether Dugdale proved he was a payroll employee of CPCC and not QEC at the time of the accident. We disagree. Here, the Defendants' provided indisputable documentary evidence of Dugdale's employment by CPCC, and Bagwell failed to produce sufficient factual support in his opposition proving the existence of a

6

genuine issue of material fact. Thus, art. 966(D)(1) mandates the granting of the Defendants' motion for summary judgment.

In order for the Defendants' motion for summary judgment to be granted, their burden is to prove their affirmative defense: employer immunity to Bagwell's personal injury claim due to Dugdale's employment with CPCC. Here, although Bagwell argues there is a genuine issue of material fact regarding the employment status of Dugdale, the Defendants provided credible and concrete evidence that Dugdale was employed by CPCC on the date of the accident, making him Bagwell's coworker. Further, Bagwell fails to offer credible or concrete evidence that Dugdale was **not** CPCC's employee. In fact, despite minor and explained inconsistencies in the CPCC payroll records, the overwhelming testimony and evidence supports the Defendant's assertion that Dugdale was indeed employed by CPCC on the date of Bagwell's accident, thus affording Dugdale the immunity provided under the workers' compensation statute.

In support of the Defendants' argument, they offer Dugdale's affidavit and deposition testimony, in which he asserted he and Bagwell were working as payroll employees for CPCC at the time of the accident. Of most significance, Dugdale provided copies of the paycheck stubs (reflecting a pay period for "08/28/2015-09/03/2015" and a pay date of September 4, 2015) and the Internal Revenue Service 2015 W-2 tax forms that CPCC issued for both men, confirming that the men were paid wages by CPCC for the subject date of the accident. Dugdale's paycheck stub listed him as a "supervisor" working 22 hours during the period for gross earnings of $660. There were even "taxes" withheld from Dugdale's check for "Federal Withholding," "Social Security Employee," "Medicare Employee," and

7

Louisiana "withholding."  Dugdale's W-2 reflects these same amounts, and notably Chad Pody and Angela Pody, co-owners of CPCC, corroborated these facts in their deposition testimony.  We believe this to be conclusive proof that Dugdale was indeed an employee of CPCC at the time of Bagwell's accident.

Not only do the Defendants provide documentary proof which substantiates Dugdale's employment with CPCC, they offer additional evidence via affidavits and deposition testimony in support of their affirmative defense.  The deposition testimony of Dugdale as well as Chad and Angela Pody provide explanations confirming the employment relationships between Dugdale, his QEC employees, and CPCC; these stem from Dugdale's issues with his own workers' compensation coverage as well as the regulations regarding CPCC's Disadvantaged Business Entity ("DBE") designation.

Regarding Dugdale's workers' compensation coverage, he testified that because his workers' compensation coverage had lapsed, no one was working for QEC at the time of the accident because he had no workers' compensation coverage.  Thus, his QEC crew members worked the Tremont project as direct payroll employees with CPCC and were covered under its workers' compensation insurance.[5]  In fact, Bagwell's employment with CPCC at the time of his accident actually worked to Dugdale's benefit in that the workers' compensation claims were covered under CPCC's workers' compensation insurance and not Dugdale's.

---

[5] Dugdale acknowledged that as owner of QEC, he had executed a waiver of workers' compensation coverage as to any act or omission committed by himself while working for QEC, pursuant to La. R.S. 23:1035.

As to CPCC's DBE status, Angela Pody testified she was a Native American Indian, and since she was a co-owner of CPCC, the business was state-qualified as a DBE. This designation made CPCC eligible for specific state contracts such as the Tremont project, but was conditional on CPCC using only its *payroll* employees to staff all required labor, instead of hiring independent subcontractors. Angela stated that the Tremont project was a state government renovation project, and the westbound rest area renovation project was awarded to J.B. James Construction ("J.B. James") as the prime contractor. In turn, J.B. James hired CPCC as a DBE subcontractor to perform specific tasks such as clearing trees, constructing sidewalks, and removing concrete barriers. She noted the eastbound rest area renovation project was awarded to a different prime contractor and although CPCC bid that job as well, CPCC was not selected as a DBE subcontractor.

Although Dugdale, Chad Pody, and Angela Pody all acknowledged CPCC would sometimes subcontract crews such as QEC to perform certain tasks on a construction project, they all insisted that was not the arrangement for the Tremont project because CPCC was a DBE for that project and was *required* to use only payroll employees and not subcontractors for all labor. Chad Pody testified that when he was precluded from subcontracting a crew, he would fulfill the DBE requirement by putting workers on his payroll as temporary payroll employees for as many weeks the job required. This confirmed Dugdale's testimony that he had told his QEC crew members they would be working for CPCC for the Tremont project.

Chad also testified that while he would sometimes rent a piece of equipment and the operator would be included as part of the rental price, that was not the situation for the Tremont project. Chad stated his lease of

9

equipment from QEC on the Tremont project did not include an equipment operator.[6] Angela corroborated her husband's testimony that because CPCC was a DBE for the Tremont project, all labor, including equipment operators, had to be payroll employees. Significantly, the equipment lease identified by Bagwell does not make any mention of the inclusion of an operator for the equipment.

Bagwell attempted to cast doubt on the Defendants' evidence of Dugdale's employee status through the affidavit of Anna Theriot, an analyst with PC Recovery Digital Forensics, Inc. Theriot was hired by Bagwell to perform a forensic examination of the CPCC record system, and she averred in her affidavit that Dugdale and Bagwell had been added as CPCC payroll employees after the accident. Additionally, she noted Dugdale's payroll check for the pay period initially noted he was being paid for work on the eastbound project area, but on September 28, 2015, someone changed the description to the westbound project area. However, Angela testified in her deposition it was not uncommon for employees to be added to the payroll system after the work was done and as she was preparing the payroll. She also testified she simply made a typographical error by initially listing on Dugdale's payroll information the eastbound project area (a project they had not even been awarded and were not working on), and when she noticed the error, she corrected it to state the westbound project area.

On review, Bagwell maintains the trial court properly denied the Defendants' motion for summary judgment because Dugdale's employment

---

[6] In brief, Bagwell refers to a "lease invoice" for the equipment provided by QEC to CPCC; notably, the document referred to, although untitled, appears to be simply an invoice as there are no other terms stated other than the price of the equipment.

10

status with CPCC is a fact in dispute, arguing several reasons support his assertion. Primarily, he argues the Podys deposition testimony is self-serving. However, our review of the record shows those reasons asserted by Bagwell to be questionable and with no actual, factual, or evidentiary support. In contrast, the documentary evidence produced by the Defendants regarding Dugdale's employment is conclusive. The record contains unmistakable proof of Dugdale's employment: a payroll check stub and an IRS W-2, both covering a period of time containing the accident date. Additionally, computer records produced (the Payroll Detail Review) reflect that Dugdale was employed by CPCC and also confirm the amount paid on the payroll check stub and reported on the W-2.

Furthermore, Chad and Angela Pody's deposition testimony, which Bagwell characterizes as "self-serving," works to support the documentary evidence of Dugdale's employment with CPCC. In addition to stating unequivocally that Dugdale worked for CPCC on September 2, 2015, the Podys identified the payroll records of their company. Whereas Bagwell characterizes their testimony as "self-serving" and argues it should be discounted because it calls for a credibility assessment, the Podys' statements readily verify the documentary evidence that was presented by the Defendants. No credibility assessment is necessary; the parties simply articulated what the documentary evidence reflects. Additionally (and of particular significance), both Chad and Angela explained that CPCC, as a DBE subcontractor to J.B. James, was *required* to directly employ all of the labor on the Tremont project; thus, Dugdale was required to be an actual employee of CPCC. Moreover, the minor inconsistencies in testimony pointed to by Bagwell do not refute the indisputable documentary evidence

11

and deposition testimony that Dugdale was indeed employed by CPCC for the Tremont project on the day of Bagwell's injury.

Here, the documentary evidence, along with the testimony elicited from Dugdale, as well as Chad and Angela, establishes that Dugdale was indeed an employee of CPCC at the time of the accident, thus providing the basis for immunity under La. R.S. 23:1032 for Bagwell's personal injury claim. Innuendo and baseless accusations that a genuine issue of material fact exists are insufficient to create such an issue. It is quite clear from the evidence presented by the Defendants on their motion that Dugdale was employed by CPCC at the time of the accident. Any small inconsistencies that have been identified are insufficient and there is no real doubt as to the existence of a genuine issue of material fact—Bagwell fails to provide ascertainable proof that a general issue of material fact exists. Thus, the trial court's denial of the Defendants' motion for summary judgment was in error and should be reversed.

## CONCLUSION

For the foregoing reasons, we grant the writ filed by Quality Easel Company, Inc., and James E. Dugdale and make it peremptory. The trial court's judgment denying their motion for summary judgment is reversed, and the motion for summary judgment by Quality Easel Company, Inc., and James E. Dugdale is granted. Douglas Bagwell's claims against them addressed by their motion are dismissed with prejudice. All costs of this proceeding are assessed to Bagwell.

**WRIT GRANTED AND MADE PEREMPTORY; JUDGMENT REVERSED; AND MOTION FOR SUMMARY JUDGMENT GRANTED.**