Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,971-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

NATIONAL COLLEGIATE                    Plaintiff-Appellee
STUDENT LOAN TRUST 2005-1


versus


KRISTEN PLEASANT                    Defendants-Appellants
PATSY BROWN


* * * * *


Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021-0418


Honorable Alvin Rue Sharp, Judge


* * * * *


PLEASANT & WILLIAMS, THE            Counsel for Appellants
BARRISTERS' LAW GROUP, LLC
By: Jessica W. Williams


SESSIONS, ISRAEL & SHARTLE, LLC     Counsel for Appellee
By: Justin H. Homes


EATON GROUP ATTORNEYS, LLC
By: Gregory M. Eaton
    Lewis E. Eaton
    Matthew J. Sylvest
    Markita Hawkins


* * * * *


Before COX, THOMPSON, and MARCOTTE, JJ.

**COX, J.**

This civil appeal arises from the Fourth Judicial District Court, Ouachita Parish. The trial court granted summary judgment in favor of the plaintiffs, National Collegiate Student Loan Trust 2005-1 ("NCSLT") to enforce an outstanding student loan account. Defendants, Kristen Pleasant ("Kristen") and Patsy Brown ("Brown") (collectively, "Appellants"), appealed. For the following reasons, we affirm.

## FACTS

In 2004, Kristen obtained an Education One Undergraduate Loan issued through Bank One, N.A.[1] Pleasant's mother, Brown, cosigned on this loan and another separate student loan for Kristen's husband, Richard Pleasant.

On February 8, 2021, NCSLT filed a lawsuit against Kristen and Brown[2] as codefendants to collect on an outstanding student loan account in the amount of $33,638.19, together with an accrued interest of $16,525.00, an additional 3.5% interest from the date of judgment, and costs of the proceedings. NCSLT also filed a request for admission of facts and filed into the record an "Affidavit and Verification of Account" executed by Anna Kimbrough, the custodian of records for Transworld Systems Inc., ("TSI") a subservicer for NCSLT, with accompanying documents related to the loan.

Collectively, the petition, affidavit, and the attached documentation indicated Kristen entered into a Non-Negotiable Credit Agreement ("Credit Agreement") with Bank One to obtain an undergraduate student loan. The

---

[1] Bank One, N.A. was acquired by JP Morgan Chase Bank, N.A. in 2004.

[2] Kristen and Brown, collectively as codefendants, were also sued in five other student loan collection actions in Ouachita Parish, brought by a different but related plaintiff to NCSLT.

attached Disclosure Statement to Kimbrough's affidavit indicated the loan was disbursed on November 10, 2004, in the amount of $18,764.00, with an origination fee of $2,201.36. With an additional finance charge, Kristen's total amount owed, over the course of repayment, was estimated to be $53,104.80.

Kimbrough explained that all information and documentation related to the loan was provided to TSI by American Education Services ("AES") the previous loan servicer for National Collegiate. The attached Pool Supplement purports that Bank One transferred, sold and assigned this loan in tandem with several other loans ("Loan Pool") to National Collegiate Funding, LLC ("National Collegiate") on February 23, 2005, while the loan was in good standing. According to Kimbrough's affidavit, on that same day, National Collegiate subsequently transferred and sold the Loan Pool, which included Kristen's loan, to NCSLT, assigning all its rights, title, and interest in the Loan Pool to the entity as indicated by the Deposit and Sale Agreement in the record. According to the attached Loan Payment History Report, Kristen's last payment on the loan was on August 28, 2020, in the amount of $20.00.

On February 22, 2021, Appellants filed exceptions of no right of action and lack of procedural capacity and vagueness, arguing that under La. C.C.P. art. 699, only a trustee of NCSLT has the procedural capacity to file suit. Appellants further argued that NCSLT failed to set forth a right of action because its petition was vague and failed to sufficiently allege or present exhibits which show NCSLT obtained the rights over Kristen's loan which would allow it to enforce a right or interest in the non-negotiable promissory note. On March 1, 2021, Appellants moved to consolidate this

action with five other related actions filed against Kristen and Brown, and six actions filed against Richard and Brown.

On May 10, 2021, NCSLT filed its opposition, arguing first that under Delaware law, 12 Del. C. 3801, it is a registered business trust with the explicit right to sue and be sued, and is thus recognized as a juridical person under Louisiana law, La. R.S. 9:1725(3). Second, NCSLT argued that its petition sufficiently alleged it was the owner of the loan as assigned and transferred by Bank One, and further, Kimbrough's affidavit and the accompanying exhibits reflect that Kristen's specific loan was transferred from Bank One, Kristen's payment history, and a copy of the note Kristen signed, which included the terms and conditions, as well as the Disclosure Statement.

On June 14, 2021, a hearing on the exceptions was held, wherein the trial court took the matter under advisement. On July 13, 2021, the trial court overruled Appellants' exceptions in consideration of the Third Circuit's decision in *National Collegiate Student Loan Trust 2006-1 v. Thomas*, 21-90 (La. App. 3 Cir. 6/2/21), 322 So. 3d 374, in which the court held that a business trust that is recognized as a juridical person in another state has the same capacity to bring a civil suit in Louisiana courts.

On November 3, 2022, Appellants filed their answer to NCSLT's petition, generally denying the allegations of the petition, and asserting affirmative defenses of lack of procedural capacity, vagueness, and no right of action. On May 11, 2023, NCSLT filed for summary judgment, alleging that Appellants failed to raise any genuine issues of material fact in response to the allegations, and instead purported only general and unsupported

3

affirmative defenses without sufficient evidence to satisfy their burden of proof.

On October 5, 2023, Appellants filed an opposition to the motion, arguing that the information provided in Kimbrough's affidavit was not based on personal information; therefore, she was unable to testify about the accuracy of the records NCSLT submitted regarding the loan. Appellants argue that the evidence submitted, which allegedly shows that NCSLT properly obtained the loan, is inadmissible as it lacks foundation, and is merely hearsay. In support, Appellants filed an affidavit, admitting that Kristen and Brown "obtained student loan funds from a student loan lender, who in turn, assigned the student loan account to one of the trusts." However, Appellants maintain that numerous payments were made toward the loan obligation, and the balance on the loan was "far less than $90,000."

On October 19, 2023, a hearing for NCSLT's motion for summary judgment was held, and after further briefing on the matter, the trial court granted judgment in favor of NCSLT. On July 30, 2024, an amended judgment was signed, awarding NCSLT the full amount prayed for in its original petition. This appeal followed.

## DISCUSSION

On appeal, Appellants present three assignments of error, arguing that the trial court erred in: 1) granting NCSLT's motion for summary judgment; 2) overruling Appellants' exceptions of no right of action, lack of procedural capacity, and vagueness; and 3) denying Appellant's motion to consolidate this action with the remaining 11 matters filed against Kristen and Brown as codefendants, and Brown and Richard as codefendants.

*Dilatory Exception of Lack of Procedural Capacity*

On review, this Court will address Appellants' second assignment of error concerning the dilatory exception of lack of procedural capacity first.

Appellants assert that the trial court erred in overruling their exception of lack of procedural capacity because it failed to determine that NCSLT is an express trust under Louisiana law and cannot file suit in its own name. Specifically, Appellants argue that NCSLT's assertion that under Delaware law it is characterized as a statutory trust with the explicit right to sue in its own name is moot because NCSLT filed this matter in Louisiana, subjecting it to the limitations regarding capacity of trusts under La. C.C.P. art. 699.

Appellants argue that any right of action that may be enforced regarding a trust must be unquestionably vested through a trustee, and not through the trust itself, as in the present matter. Appellants further argue that even under Delaware law, statutory trusts are required to have a trustee who will carry out the trust's business, including filing and defending lawsuits.

Lack of procedural capacity is a dilatory exception which tests a party's legal capacity to bring an action or have an action brought against it. *Stonecipher v. Caddo Parish*, 51,148 (La. App. 2 Cir. 4/7/17), 219 So. 3d 1187, *writ denied*, 17-0972 (La. 10/9/17), 227 So. 3d 830. The determination of whether a party has the procedural capacity to sue or be sued involves a question of law, which is reviewed under the de novo standard of review to determine whether the ruling of the trial court was legally correct. *Woodard v. Upp*, 13-0999 (La. App. 1 Cir. 2/18/14), 142 So. 3d 14.

A similar issue was discussed at length in the Third Circuit's decision in *National Collegiate Student Loan Trust 2006-1 v. Thomas*, *supra*. In that case, the court found that Louisiana law recognizes unincorporated foreign

5

entities, such as business trusts, created under the laws of another state as independent juridical entities. Moreover, the court held that there is no Louisiana law that prevents such entities from filing civil actions in Louisiana forums. On review, this Court adopts the Third Circuit's rationale regarding this issue.

As a general proposition, as noted by the Third Circuit, a trust is defined as "the relationship resulting from the transfer of title to property to a person [the trustee] to be administered by him as a fiduciary for the benefit of another." La. R.S. 9:1731. Accordingly, the trustee is the proper plaintiff and defendant in any action to enforce a right or obligation on behalf of or against a trust estate. La. C.C.P. art. 699 and 742.

In the present case, NCSLT characterizes itself as a registered statutory trust under Delaware law, 12 Del. C. 3801(g). Generally, such trusts are treated as unincorporated associations that are statutorily empowered to sue and be sued in their own right. 12 Del. C. 3804(a). "Although Louisiana law does not have a 'statutory' or 'business' trust per se, its statutory laws do contain elements similar to those provided under the Delaware Statutory Trust Act."

As the Third Circuit explained, the definition of unincorporated entities under the Louisiana Business Corporation Act includes "business trust. . . regardless of whether [it] is treated as a juridical person under the relevant organic law," La. R.S. 12:1-140(24B), and foreign unincorporated entities are defined to include "an unincorporated entity whose internal affairs are governed by an organic law of a jurisdiction other than this state." La. R.S. 12:1-140(10B). Moreover, both the Louisiana Trust Code and the Louisiana Uniform Commercial Code ("La. U.C.C.") include business trusts

6

in the definition of "person," and a comment to the La. U.C.C. provides that if "a trust arising in another state has a separate legal existence as a juridical person under the laws of that state, then this definition permits that entity to be a person for purposes of [the La. U.C.C.]."

Following this logic and the rationale outlined in the Third Circuit's decision, this Court likewise finds that NCSLT is a registered business trust under Delaware law that is characterized as a juridical person with the capacity to bring a civil suit in its own name in the absence of a trustee, and this right is recognized in Louisiana. Accordingly, we find that the trial court did not err in overruling this portion of Appellants' exception.

### *Exception of No Right of Action & Motion for Summary Judgment*

Appellants further assert that because NCSLT lacks procedural capacity, it does not, in part, have a right of action to enforce the instant matter. Specifically, Appellants argue that when a trust files suit in its own name, absent a trustee acting on its behalf, the trust lacks a right of action to enforce the suit.

However, a dilatory exception of lack of procedural capacity is not synonymous with no right of action. An exception of no right of action is a peremptory exception designed to test whether a plaintiff has a real and actual interest in the action. La. C.C.P. art. 927(A)(5); *Indus. Companies, Inc. v. Durbin*, 02-0665 (La. 1/28/03), 837 So. 2d 1207. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. *Indus. Companies, Inc. v. Durbin, supra*. Therefore, an action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The exception of no right of action assumes

7

that the petition states a valid cause of action for some party and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. *Id.*

We previously determined that NCSLT is an independent juridical entity with a separate legal personality from its trustee, that is also recognized under Louisiana law as having the ability to instigate an action, and have an action enforced against it. Therefore, the only issue that remains as to this assignment of error, is whether NCSLT has a real and actual interest vesting the ability to enforce this action.

To this point, Appellants argue that the trial court erred in overruling their exception of no right of action because NCSLT did not allege within its petition that it was the holder of Kristen's student loan account, or that it was the transferee or assignee of any loan.

An exception of no right of action presents questions of law; therefore, the standard of review for an exception of no right of action is de novo by the appellate court. *Johnson v. Johnson*, 49,500 (La. App. 2 Cir. 1/14/15), 161 So. 3d 1002, *writ denied*, 15-0320 (La. 4/24/15), 169 So. 3d 359, *citing Hood v. Cotter*, 08-0215 (La. 12/2/08), 5 So. 3d 819.

Although Appellants assert that NCSLT did not allege in its petition that it was the holder, assignee, or transferee of Kristen's loan, this Court's de novo review reflects that NCSLT's petition provided, in part:

> NOW INTO COURT, through the undersigned attorney, comes National Collegiate Student Loan Trust 2004-1, domiciled in the State of Delaware, **the owner of all rights, title and interest in this receivable issued through JP Morgan Chase Bank, NA**. . . (Emphasis added).

As reflected, NCSLT alleged that it was "the owner of all rights, title and interest" as issued through Bank One. In support, NCSLT attached a copy

8

of the Pool Supplement, which reflected that Bank One sold its rights in the loans to National Collegiate, who in turn sold and transferred those rights to NCSLT. The Pool Supplement provided, in pertinent part:

**Article 1: Purchase and Sale**

[Bank One] hereby transfers, sells, sets over and assigns to [National Collegiate] . . . each student loan set forth on the attached **Schedule 2** (the "Transferred Bank One Loans") along with all of the [Bank One's] rights under the Guaranty Agreement relating to the Transferred Bank One Loans. [National Collegiate] in turn will sell the Transferred Bank One Loans to [NCSLT]. [Bank One] hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank One Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. [National Collegiate] hereby purchases said Notes on said terms and conditions.

The copy of the attached Loan Pool evidenced that on February 23, 2005, NCSLT obtained loans that originated under Bank One's Education One loan program. Further, a copy of the Deposit and Sale Agreement also evidenced National Collegiate sold, transferred, and assigned those loans, which included Kristen's loan which she obtained in November 2004, to NCSLT. The Deposit and Sale Agreement provided, in pertinent part:

ARTICLE I
TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

. . .

ARTICLE III
SALE AND PURCHASE

Section 3.01. **Sale of Loans**. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans. Section 3.02. **Assignment of Rights**. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements

9

listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Moreover, this Court highlights that Appellants admitted in their affidavit that Appellants not only obtained the loan in question but that the original lender assigned the loan to one of the trusts. Appellants provided:

While it is true that affiants obtained student loan funds from a student loan lender who, in turn, assigned the student loan account to one of the trusts. . .

Having found that NCSLT pled in its petition that it was the "owner of all rights, title and interest" as issued from Bank One, coupled with the accompanying documents which evidence that the loan Kristen obtained was sold and transferred to NCSLT, we find that NCSLT has demonstrated it has a real and actual interest by which to enforce this suit. Accordingly, we find that the trial court did not err in overruling this exception.

Next, Appellants argue that the trial court erred in granting NCSLT's motion for summary judgment because a genuine issue of material fact remains as to NCSLT's right to enforce the loan, the accuracy of the payment history, and the remaining balance on the loan. More specifically, Appellants argue that under Louisiana law, NCSLT was required to offer extrinsic evidence regarding the loan, namely, that the original promissory note should have been introduced into evidence. Appellants further assert that NCSLT did not allege that it was either the original owner or that it was the holder of the promissory note for the loan, or that a right was transferred or assigned to it.

Moreover, Appellants argue that Kimbrough's affidavit, which purported to show that NCSLT owned the underlying student loans, was inadmissible hearsay. Appellants assert that Kimbrough, as an employee of

10

TSI, lacks personal knowledge as to the regular business practices or record keeping of AES, the original loan servicer.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. *Bagwell v. Quality Easel Co., Inc.*, 53,282 (La. App. 2 Cir. 11/18/20), 307 So. 3d 354, *writ withdrawn*, 20-01430 (La. 1/20/21), 308 So. 3d 1148, *writ denied*, 20-01431 (La. 1/20/21), 308 So. 3d 1166. The burden of proof rests with the party filing the motion. La. C.C.P. art. 966(D)(1). The mover can satisfy his burden by filing supporting documentary evidence consisting of pleadings, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966(A)(4); *Bagwell*, *supra*.

Accordingly, the court's first procedural step is to determine whether the supporting documentary evidence is sufficient to resolve all material factual issues. *Bagwell*, *supra*, *citing Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730. If the moving party has satisfied his burden, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "At that point, the party who bears the burden of persuasion at trial. . . must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial." *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880, 883.

In ruling on a motion for summary judgment, a judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter asserted, but instead to determine whether there is a genuine issue of triable

11

fact. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874. A "genuine issue" is a triable issue, an issue on which reasonable persons could disagree. *Champagne v. Ward*, 2003-3211 (La. 1/19/05), 893 So.2d 773; *Bagwell*, *supra*;

In ruling on a motion for summary judgment, the court must assume that all affiants are credible. *Id*.; *Tatum v. Shroff*, 49,518 (La. App. 2 Cir. 11/19/14), 153 So. 3d 561. The court cannot make credibility calls but must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. *Id*.

On appeal, a motion for summary judgment is reviewed de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Id.*; *Maggio*, *supra*.

Appellants argue that NCSLT was required to introduce extrinsic evidence, i.e. the original promissory note, to enforce the loan. We disagree. NCSLT's right to enforce the debt was not contingent upon the production of the original promissory note because the Credit Agreement in this case is not a negotiable instrument. First, we highlight that to secure a student loan from Bank One, Kristen endorsed a Non-Negotiable Credit Agreement. The terms of that agreement specified, in part, that "this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code." Because

12

this debt is not subject to Article 3 of the Uniform Commercial Code,[3] which governs negotiable instruments, enforcement of a debt secured by a non-negotiable credit agreement is not subject to the same evidentiary requirements of negotiable instruments, such as in foreclosure actions where a party is required to produce the original instrument or promissory note to demonstrate it is the rightful holder.

Moreover, as this Court has previously explained in *National Collegiate Student Loan Trust 2006-1 v. Huggins*, 55,786 (La. App. 2 Cir. 10/2/24), 2024 W.L. 4364586, this is an ordinary proceeding rather than an executory proceeding "which [is] used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment and in other cases allowed by law." La. C.C.P. art. 2631.

Given the nature of these proceedings, namely that it is an ordinary proceeding rather than an executory one, that the Credit Agreement Kristen signed specifically designated that the application was a non-negotiable instrument, and that the terms of the Credit Agreement specifically noted that the debt was not governed by Article 3 of the U.C.C., this Court cannot say that NCSLT was required to produce the original promissory note to enforce the debt on this student loan contract.

Appellants also argue that the attached exhibits to Kimbrough's affidavit were inadmissible to support NCSLT's claims because Kimbrough was not qualified to testify as to AES's records; therefore, Kimbrough's admissions are merely hearsay. Appellants maintained that even if the

---

[3] Louisiana adopted the Uniform Commercial Code, as codified in La. R.S. 10:3-104.

13

documents could be considered business records, Kimbrough, as a TSI employee, cannot authenticate AES's business records.

La. C.C.P. art. 967(A) provides, in pertinent part, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." While La. C.E. art. 802 prohibits the admission of hearsay evidence, La. C.E. art. 803(6) provides that business records are an exception to the hearsay rule if the proponent can establish that the records sought to be admitted were (1) made at or near the time by, or from information transmitted by, (2) a person with knowledge, (3) made and kept in the course of a regularly conducted business activity, and (4) that it was the regular practice of that business activity to make and to keep the information.

La. C.E. art. 803(6) does not preclude the introduction of incorporated business records originally generated by another business, if properly authenticated and determined to be trustworthy by the trial court. *Bishop v. Shaw*, 43,173, (La. App. 2 Cir. 3/12/08), 978 So. 2d 568. Therefore, under La. C.E. art. 803(6), the custodian of the record "or other qualified witness" can establish the essential foundational predicate for admissibility of business records without having prepared the records. *Achary Elec. Contractors*, *L.L.C. v. SimplexGrinnell LP*, 15-542 (La. App. 5 Cir. 1/27/16), 185 So. 3d 888.

A party who seeks to submit written hearsay evidence pursuant to La. C.E. art. 803(6) must authenticate it by a qualified witness. *Id.* The witness laying the foundation for admissibility of the business records does not have to be the preparer of the records. *Id.* A qualified witness only needs to be

14

familiar with the record-keeping system of the entity whose business records are sought to be introduced. *Id.* The custodian of the record or other qualified witness must testify as to the record-keeping procedures of the business and thus, lay the foundation for the admissibility of the records. *Id.* If the foundation witness cannot vouch that the Code of Evidence requirements have been met, the evidence must be excluded. *Id.*

In this case, the affiant, Kimbrough, provided about the accuracy and authenticity of the loan records TSI received from AES. Kimbrough stated specifically that she was:

> . . . familiar with the process by which [both] TSI and AES, on behalf of [NCSLT] receives loan records from the prior services or loan originator, including loan origination, documents and data recording the electronic transactions pertaining to the loans, including, but not limited to, payments, credits, interest accrual and any other transactions that could impact the loans. It is TSI's regularly-conducted business practice to incorporate these loan records into the system of record it maintains on [NCSLT's] behalf.

Importantly, Kimbrough testified:

> **My statements are based on personal knowledge of the educational loan which I obtained through my training, experience, investigation and review of the business records that are kept and maintained by TSI** as dedicated record custodian of this educational loan, and also my understanding of the structured loan program by which this educational loan was originated, funded, documented and sold ultimately to [NCSLT] .... The records I reviewed and relied upon in giving this Affidavit, including the business records attached (the "loan records"), consist of electronically stored documents and electronic data that are within TSI's care, custody or control.
> . . .
>
> **I have access to, training and experience using the system of record utilized by [AES] to enter, maintain and access the loan records during its role as servicer, and I am familiar with the transaction codes reflected in those records.**
>
> It is TSI's regularly conducted business practice to incorporate prior servicers' loan records into the system of record it maintains on [NCSLT's] behalf .... **I am familiar with the**

15

> **process by which TSI receives access [to loan records from [NCSLT's] prior servicers and incorporates those records into TSI's system of record.**
>
> AES[,] as the prior servicer of the educational loan, began servicing the educational loan upon the first disbursement and continued to service the educational loan until it was charged-off. Upon charge-off, the loan records were transmitted to and incorporated within the records of TSI (or its predecessor), as part of its regularly-conducted business practice...
>
> **I am familiar with the process by which TSI and AES, on behalf of [NCSLT], each receives loan records from the prior servicer or loan originator, including** loan origination documents and data recording the electronic transactions pertaining to the loans...It is TSI's regularly-conducted business practice to incorporate these loan records into the system of record it maintains on [NCSLT's] behalf.
> Educational loan records that are within TSI's care, custody and control as Subservicer for [NCSLT], including records entered and maintained by AES...were created, compiled or recorded, and **kept as part of regularly conducted business activity at or near the time of the event recorded.** The loan records were created, compiled or recorded from information transmitted by a person with personal knowledge of such event who had a business duty to report it, from information transmitted by a person with personal knowledge of such event. **Such records are created, kept, maintained, accessed and relied upon in the course of ordinary and regularly conducted business activity**. (Emphasis added).

In reviewing Kimbrough's affidavit, we find that Kimbrough's affidavit satisfies the personal knowledge requirements of La. C.C.P. art. 967(A). In particular, the affidavit reflected that Kimbrough's statements provided therein were based on her personal knowledge of the loan based on her position of employment with TSI as the dedicated record custodian. Moreover, the affidavit reflected that Kimbrough's personal knowledge of Kristen's loan stemmed from her training and experience in using the record systems from *both* TSI and AES, the original servicer for the loan.

We further find that the affidavit further satisfies the requirements of La. C.E. art. 803(6). Kimbrough's affidavit establishes that the attached

16

documents: (1) were obtained by TSI from AES and were "kept as part of regularly conducted business activity at or near the time of the event recorded"; (2) the "loan records were created, compiled or recorded from information transmitted by a person with personal knowledge"; (3) "[s]uch records are created, kept, maintained, accessed and relied upon in the course of ordinary and regularly conducted business activity"; and (4) it was "TSI's regularly-conducted business practice to incorporate these loan records into the system of record it maintains on [NCSLT's] behalf."[4]

Once NCSLT established its prima facia case, the burden then shifted to Appellants to rebut or refute NCSLT's allegations through evidence that indicated the existence of a genuine issue of material fact for trial. In this case, Appellants introduced their affidavit in which Kristen and Brown generally denied having had any contact or involvement with TSI or Kimbrough and alleged that the amount NCSLT claims Appellants owe is inaccurate. Specifically, Appellants stated:

> [NCSLT] claims that affiants owe. . . more than $90,000.00 under the subject account which is the subject of the above captioned lawsuit. That affiants do not owe any account in that sum and [NCSLT] is completely wrong about the demand which they have made in this lawsuit, and the pending Motion for Summary Judgment.
>
> While it is true that affiants obtained student loan funds from a student loan lender who, in turn, assigned the student loan account to one of the trusts, affiants made numerous payments on the student loan obligation which they did obtain, and the balance is far less than $90,000.00.
>
> In review of the Exhibits attached to plaintiff's Motion for Summary Judgment, plaintiff has submitted information concerning the debt collector's [Trans World] rendition of the account and balance which is not accurately portrayed at all.

---

[4] Additionally, Kimbrough provided that each document was a "true and correct copy" as required by La. R.S. 13:3733.

Further and significantly, plaintiff has not accounted for the monies which were paid in by affiants on the student loan obligation once payments became due and owing.

Although Appellants allege that the amount due that NCSLT seeks to enforce is inaccurate, no evidence was introduced to support their claim. In a motion for summary judgment, if the moving party meets its burden, then the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). This party *must* come forth with evidence which demonstrates they will be able to meet the burden at trial. *See Samaha v. Rau*, *supra*. Without further evidence from the Appellants regarding the payment history on the student loan which would differ from the records submitted by NCSLT, we cannot say that the trial court erred in granting summary judgment.

Accordingly, we find that this assignment of error lacks merit.

### Motion to Consolidate

Finally, Appellants argue that the trial court abused its discretion in denying the motion to consolidate. Appellants argue that the motion to consolidate concerned six cases filed against Kristen and Brown, and six cases filed against Richard and Brown, one of which is currently before this Court on appeal. Appellants highlight that Kristen and Richard are spouses who obtained their respective loans with the same guarantor, Brown, and are being sued by related defendants. Appellants argue that because each case is nearly identical as they involve the same parties, who each present the same arguments, it would be in the best interest of justice and judicial economy to consolidate each case and curtail any confusion or inconsistent judgments.

18

LSA-C.C.P. art. 1561 provides:

A. When two or more separate actions are pending in the same court, the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial or other limited purposes after a contradictory hearing, upon a finding that common issues of fact and law predominate, and, in the event a trial date has been set in a subsequently filed action, upon a finding that consolidation is in the interest of justice. The contradictory hearing may be waived upon the certification by the mover that all parties in all cases to be consolidated consent to the consolidation.

B. Consolidation shall not be ordered if it would do any of the following:
(1) Cause jury confusion.
(2) Prevent a fair and impartial trial.
(3) Give one party an undue advantage.
(4) Prejudice the rights of any party.

This Court acknowledges that the proceedings of this case, the companion case concerning Richard Pleasant, and the remaining suits filed against the parties are interrelated because all proceedings concern the enforcement of an outstanding student loan, with the same guarantor. However, we highlight that there are considerable differences between the respective loans associated with Kristen and Richard Pleasant. First, we note that the amount NCSLT sought to enforce against Kristen for her loan was $33,638.19, together with an accrued interest of $16,525.00. In contrast, NCSLT 2004-1 in the companion case, sought to enforce $64,375.81 plus accrued interest of $28,634.78 against Richard Pleasant.

Further, this Court has previously stated that the trust in this case is its own unique juridical personality, such that it is a distinct entity from the trust that filed suit against Richard Pleasant, despite each trust stemming from the same parent company, National Collegiate. Because of these differences, we find that the trial court did not err in denying the motion to consolidate.

19

**CONCLUSION**

For the reasons set forth herein, we affirm the trial court's judgment overruling the exception of no right of action and lack of procedural capacity and granting of summary judgment in favor of NCSLT. Costs of this appeal are assessed to Appellants.

**AFFIRMED.**